### Judith M. SZYMULA, Plaintiff,

v.

### ASH GROVE CEMENT COMPANY, et al., Defendants.

### Civil Action No. 95–2325–GTV.

United States District Court,
D. Kansas.

Sept. 13, 1996.

Frank B.W. McCollum, Nancy M. Wilson, Holman, McCollum & Hansen, P.C., Prairie Village, KS, Katherine E. Kelemen–Beatty, Office of J. Tyler Lockett, Topeka, KS, for plaintiff.

Carl A. Gallagher, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for defendants.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

In this action, plaintiff seeks to recover uncompensated overtime pay pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, arising out of her employment with Ash Grove Materials Corporation. The court has under consideration the defendants' motion for partial summary judgment (Doc. 31). For the reasons discussed below, the motion is granted in part and denied in part.

## I. SUMMARY JUDGMENT STANDARDS

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved

only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## II. FACTUAL BACKGROUND

The following facts are either uncontroverted and established by the parties in accordance with D.Kan.Rule 56.1, or are based on evidence viewed in the most favorable light to the non-moving party. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

Plaintiff was hired on July 8, 1991, to work as a secretary at Ash Grove Materials Corporation, a subsidiary of Ash Grove Cement Company, at an annual salary of $20,000. The Ash Grove Cement representatives who hired her—Joe Rieger and Barbara Jansen—told her that in the event she worked any overtime, she would be compensated at a "time-and-a-half" rate. When plaintiff began working, however, her direct supervisor—Ash Grove Materials president John Novak—explained that any overtime she worked would be compensated in the form of "comp time."

Plaintiff's responsibilities initially encompassed clerical and non-discretionary administrative functions. Although her primary supervisor was Mr. Novak, plaintiff per-

formed her duties on behalf of numerous executives of both Ash Grove Materials and Ash Grove Cement. Plaintiff also handled the workers compensation insurance billing for all of Ash Grove Cement's subsidiaries, which, in addition to Ash Grove Materials, include Union Quarries, Inc., and Fordyce Concrete Company. Ash Grove Cement and its subsidiaries shared in the cost of plaintiff's salary and benefits.

In November 1993, Ash Grove Cement named Harry Campbell as its new Risk Manager. Shortly thereafter, at Mr. Campbell's direction, plaintiff's duties began to change. Most significantly, she assumed additional responsibilities with respect to Ash Grove Materials' workers compensation plan. These responsibilities included: helping determine whether employees needed to consult physicians and, on occasion, whether employees should be placed under surveillance; assisting corporate management in ascertaining whether private investigators should be retained; working closely with the various insurance carriers administering Ash Grove Material's plan in an attempt to reduce costs; and formulating proposed claim settlements for Mr. Novak's approval.

In January 1994, Mr. Novak designated plaintiff his "administrative assistant." In this job, plaintiff assumed a wide array of responsibilities, most of which she later described in a memorandum to Mr. Novak. (Def.s' Mot.Summ.J., Ex. 3). Of the approximately forty-five hours per week that she worked, twenty-eight were spent on workers compensation issues, ten were dedicated to secretarial tasks, and seven were spent dealing with administrative matters. In June 1994, after plaintiff had been performing these additional duties for nearly six months, Mr. Novak awarded her a mid-year raise. Mr. Novak told plaintiff the raise was a result of her good work on the employee manual. This pay increase was in addition to her annual raise.

Following her January 1994 "promotion," plaintiff was classified as an "exempt" employee. This new classification also occurred within a month after plaintiff's request for twelve hours of overtime was rejected.

In this action, plaintiff seeks overtime compensation for the period of July 8, 1991 to March 10, 1995, the time of her termination. She calculates her request based upon 2080 hours worked in a year and a "time-and-a-half" overtime rate.

Plaintiff computed her overtime hours without regard to the number of hours she actually worked. When, for example, she did not work because of a paid holiday, sick leave, medical appointment, or vacation, she included that time as part of her base of forty hours for purposes of overtime. On the weeks when plaintiff took time off for these reasons, she did not actually work more than forty hours.

## III. DISCUSSION

Defendants seek partial summary judgment on the following issues: (1) Ash Grove Materials is the only proper defendant; (2) plaintiff was an exempt "administrative employee" under the FLSA from January 1994 until the time of her termination; (3) plaintiff is entitled to only one-half her regular rate of compensation for all eligible overtime; (4) plaintiff is entitled to no overtime during weeks in which she did not actually work more than forty hours; and (5) plaintiff's complaint is not deemed filed until the date she filed a party consent affidavit. The court will consider each issue in turn.

### A. Proper Defendants

Defendants argue that neither Ash Grove Cement, Fordyce, nor Union "employed" plaintiff for purposes of the FLSA and, therefore, each should be dismissed from the action. In response, plaintiff contends that much of her work for Ash Grove Materials was done on behalf of all defendants, and all defendants shared the expense of her salary and benefits as well.

As a general rule, the existence of an employment relationship under the FLSA is determined by looking to an "economic realities" test. *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 570 (10th Cir. 1994). Under this test, "technical concepts," such as master-servant and agency, are subordinated to the "economic realities" of the

circumstances as a whole. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33, 81 S.Ct. 933, 936–37, 6 L.Ed.2d 100 (1961); *Marshall v. Regis Educ. Corp.*, 666 F.2d 1324, 1326 (10th Cir.1981). The Tenth Circuit adheres to no single set of factors in undertaking this analysis.[1] Accordingly, the Court must simply "focus upon the circumstances of the whole activity and the economic reality of the relationship." *Johns v. Stewart*, 57 F.3d 1544, 1559 n. 21 (10th Cir.1995).

Defendants rely exclusively on plaintiff's deposition testimony in support of their motion. The statements contained therein, however, do not indicate that Ash Grove Materials was plaintiff's sole employer. Plaintiff's testimony suggests that while she may have nominally worked directly for Ash Grove Materials, her work often inured to the benefit of all defendants. Plaintiff, for example, handled the insurance billing for all of Ash Grove Cement's subsidiaries. She also, as part of her responsibilities coordinating Ash Grove Material's workers compensation claims, consulted and maintained close communications with Ash Grove Cement's risk management department. Moreover, plaintiff's affidavit indicates that not only did each of the four defendants share her salary expense, but several defendants' executives shared supervisory control over her work.

29 C.F.R. § 791.2(b)(3) appears to address the type of situation presented in this case. It provides that a single individual may stand in the relation of an employee to two or more employers at the same time under the FLSA.

> Where the employee performs work which simultaneously benefits two or more employers, ... a joint employment relationship generally will be considered to exist in situations such as ... (3) where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is

under common control with the other employer.

*Id.* Moreover, the Supreme Court has held that, under the FLSA, a parent corporation may be liable for the acts of its subsidiaries when the various entities act as an integrated enterprise. *Falk v. Brennan*, 414 U.S. 190, 195–96, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973); *see also Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir.1993) (discussing elements comprising "integrated enterprise" test).

The court finds that plaintiff's affidavit, as well as her deposition, are replete with examples of subsidiary interconnectedness and apparent joint management control. Viewing the evidence in the light most favorable to the plaintiff, the court cannot say that there is no genuine issue of material facts on this matter. Summary judgment on the issue is, therefore, inappropriate.

## B. Administrative Exemption

Defendants also argue that plaintiff, following her "promotion" in January 1994, was an "administrative employee" and, thereafter, exempt from the FLSA's overtime compensation requirements. Plaintiff counters that the work she performed was always clerical in nature and involved little discretion.

Although the FLSA generally requires employers to compensate employees who work more than forty hours per week with overtime pay, 29 U.S.C. § 207(a), the statute exempts from its coverage "any employee employed in a bona fide executive, administrative, or professional capacity." *Id.* § 213(a)(1). Congress delegated to the Department of Labor the responsibility of developing regulations defining the scope of this exemption.

The regulations establish two tests for determining whether an individual is exempt from the FLSA as a bona fide "administrative" employee. Employees earning less than $250 per week are subject to the "long

---

1. While the Tenth Circuit does utilize multi-pronged analyses in certain FLSA employment relationship inquiries—e.g., when assessing "independent contractor/employer" and "employee/trainee" distinctions—none of those tests are

apposite here. Furthermore, the Tenth Circuit, in *Stewart*, 57 F.3d at 1559 n. 21, specifically did not adopt the test defendants propose, derived from *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983).

test" of 29 C.F.R. §§ 541.2(a)–(e), while those earning $250 or more per week are governed by the "short test" set forth at § 541.2(e)(2).

■ All parties agree that the "short test" controls this dispute. Under this test, employees are deemed exempt if (1) their "primary duty consists of ... [t]he performance of office or nonmanual work directly related to management policies or general business operations of [the] employer," 29 C.F.R. § 541.2(a)(1), and (2) such duty "includes work requiring the exercise of discretion and independent judgment." *Id.* § 541.2(e)(2). The employer bears the burden of demonstrating that "the employee fits 'plainly and unmistakenly within the exemption's terms.'" *Carpenter v. City & County of Denver*, 82 F.3d 353, 355 (10th Cir.1996) (citations omitted). Moreover, courts must narrowly construe the exemption. *Id.*

### 1. Primary Administrative Duty

The court's first task in assessing plaintiff's exemption is to determine whether her work "directly related to management policies or general business operations of [her] employer." This phrase describes:

> those type of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work.... [T]he phrase [also] limits the exemption to persons who perform work of substantial importance to the management or operation of the business.

29 C.F.R. § 541.205(a). Administrative duties include "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." *Id.* § 541.205(b).

■ To fall within the exemption, these administrative tasks must have constituted plaintiff's "primary duty." As a rule of thumb, an employee's "primary duty" means that duty which occupies the major part, or over fifty percent, of the employee's time. *Department of Labor v. City of Sapulpa*, 30 F.3d 1285, 1287 (10th Cir.1994); 29 C.F.R. § 541.103. Time alone, however, is not the only test. The relative importance of the employee's duties and the frequency with

which the employee exercises discretion also are relevant considerations. *Reich v. Wyoming*, 993 F.2d 739, 742 (10th Cir.1993).

■ Plaintiff does not appear to dispute that, after January 1994, her primary duties centered around Ash Grove Material's workers compensation claims. Nor does she disagree that such matters were within the purview of her employer's administrative operations. Plaintiff insists, however, that the work she performed in this area was essentially clerical and not of "substantial importance" to the business. The determination of whether such work is of substantial importance to the employer is tied intrinsically to the level of discretion and independent judgment exercised by the employee in performing her responsibilities. *See generally Dalheim v. KDFW–TV*, 918 F.2d 1220, 1231 (5th Cir.1990); 29 C.F.R. § 541.205(c)(2). The court now turns to that issue.

### 2. Discretion and Independent Judgment

The exercise of discretion and independent judgment generally involves:

> the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term ... implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.

29 C.F.R. § 541.207(a). The requisite judgment also must be both "real and substantial, that is, [it] must be exercised with respect to matters of consequence." *Id.* § 541.207(d).

■ Plaintiff first contends that her title of "Administrative Assistant" was inaccurate. Her title, however, is irrelevant. Whether defendants correctly classified plaintiff as exempt "depends on the character of [her] responsibilities and tasks, not on her job title." *Justice v. Metropolitan Gov't of Nashville*, 4 F.3d 1387, 1392 (6th Cir.1993) (quoting *Overstreet v. North Shore Corp.*, 318 U.S. 125, 132, 63 S.Ct. 494, 498–99, 87 L.Ed. 656 (1943)).

Plaintiff detailed her job responsibilities in a memorandum to John Novak. Plaintiff now insists that these descriptions mischar-

acterize her work because Mr. Novak allegedly instructed her at the time to self-aggrandize her duties. Regardless of the memo's substantive validity, the court finds that plaintiff's deposition testimony supports defendants' argument that plaintiff's work entailed the exercise of significant discretion and independent judgment.

The most trenchant examples are evidenced in plaintiff's workers compensation responsibilities, which she testified occupied twenty-eight of her forty-five hour work week. Plaintiff maintains that none of those duties involved discretion because she never acted without obtaining prior consent. The necessity for approval by superiors, however, does not vitiate the administrative exemption. Indeed, the regulations provide that:

> The term "discretion and independent judgment" ... does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review. The decisions ... may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment within the meaning of the regulations.

29 C.F.R. § 541.207(e). Although plaintiff claims to have acted only in accordance with guidelines established by her employers, she does not identify what those guidelines are. This is insufficient to create a genuine issue of material fact. *Hills v. Western Paper Co.,* 825 F.Supp. 936, 939 (D.Kan.1993).

Plaintiff also exercised substantial independent judgment with respect to Ash Grove Material's employee manual. She had repeated discussions with Gene Billings and John Novak during which she proposed topics for inclusion in the manual. Although she was required to submit her work to Mr. Novak for approval, plaintiff drafted several parts of the text herself. Plaintiff, in fact, received a promotion largely as a result of her job performance on the manual.

Furthermore, Ash Grove Materials vested plaintiff with discretion in matters affecting secretaries in her work area. In her deposition, plaintiff denied that she exercised "indirect (work) supervision over the Office Secretary position," despite having written as much in her Current Job Description Changes. (Def.s' Mot.Summ.J., Ex. 3). Plaintiff conceded, however, that she trained the office secretary with regard to handling workers compensations claims and benefits. She kept the president apprised each week of the status of the office, including the activities and performance of these secretaries. Mr. Novak also entrusted her with the responsibility of drafting a job description for a new secretary that he was contemplating hiring. These duties are neither clerical nor insignificant.

Finally, plaintiff conceded in her deposition that she performed administrative assistant responsibilities for the president of Ash Grove Materials. Although her duties may not have allowed her to utilize much independent judgment at the executive level of the company, the regulations "do not require the exercise of discretion and independent judgment to occur at so high a level." 29 C.F.R. § 541.207(d)(2).

Plaintiff began performing many of these administrative responsibilities, particularly the workers compensation duties, after Harry Campbell became Risk Manager of Ash Grove Cement in November 1994. Although it is not clear how soon after Mr. Campbell's arrival plaintiff took on the additional duties, the "transition" occurred no later than the time at which defendants classified plaintiff as an exempt employee. Accordingly, the court concludes that plaintiff, subsequent to January 1994, did exercise the requisite discretion and independent judgment to fall within the FLSA's "administrative exemption."

### C. Computation of Overtime

Both parties agree that plaintiff was eligible for overtime compensation prior to January 1994. Defendants argue that to the extent plaintiff worked any overtime during this period, she is entitled to compensation of only 50% of her normal salary rate for those

hours. Plaintiff responds that defendants are compelled to pay her 150% of her normal salary rate for all overtime hours.

The FLSA, as a general rule, mandates that employers compensate non-exempt employees who work more than forty hours in a week with overtime pay "at a rate not less than one and one-half times the regular rate at which [they] are employed." 29 U.S.C. § 207(a)(1). The regulations, however, provide for different overtime calculations for individuals employed on a fixed salary basis whose hours frequently fluctuate:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act.. . .

29 C.F.R. § 778.114(a). Any overtime worked by these fixed-salary employees need only be paid at one-half the employee's normal hourly rate. *Id.* This diminished rate "satisfies the overtime pay requirements because such hours have already been compensated at the straight time regular rate, under the salary arrangement." *Id.*

While it is undisputed that plaintiff worked fluctuating hours for a fixed salary, it is not clear whether there was a mutual understanding between the parties that plaintiff's overtime would be restricted by the means set forth in § 778.114. When plaintiff discussed the overtime issue with Mr. Novak, he expressed that any overtime would be paid in the form of "comp time" because he did not want "Ash Grove Cement knowing how much time his secretaries spent doing things for him." Plaintiff testified, however, that Barbara Jansen and Joe Rieger—the individuals who hired her as Mr. Novak's secretary— explained that she would be paid "time-and-

a-half" if she worked more than forty hours in any week.

Plaintiff's testimony also suggests that she periodically asked to be compensated for overtime but was refused. An employer's minimized overtime obligations, premised on § 778.114, may be enforced only if there is a "clear mutual understanding" between the parties that the fixed salary agreement limits the employee's right to overtime. *Ferrero v. Amigo, Inc.,* 703 F.Supp. 890, 892–93 (D.Kan.1988). Viewing the evidence in the light most favorable to the plaintiff, the court cannot say that there is no issue that such an understanding existed and, accordingly, denies summary judgment on this point.

### D. Entitlement to Overtime

Next, defendants seek partial summary judgment on plaintiff's claims requesting overtime compensation in weeks in which she did not actually work more than forty hours. Plaintiff responds by stating that she calculated her overtime on the same basis used by defendants' other non-exempt employees. Plaintiff does not dispute defendants' contention that she included hours in which she did not work on account of holiday, sick leave, medical appointments, and vacation.

Absent an express agreement to the contrary, the FLSA does not require employers to include in overtime computation time in which employees are "absen[t] from work for vacation, holidays, illness, or any other reason." *Boll v. Federal Reserve Bank,* 365 F.Supp. 637, 646–47 (E.D.Mo. 1973), *aff'd,* 497 F.2d 335 (8th Cir.1974). There is no evidence that defendants ever incorporated these type of absences in non-exempt employees' overtime calculations. The court, therefore, concludes that summary judgment on this point is appropriate.

### E. Commencement of Action

Finally, defendants contend that plaintiff's complaint is deemed filed only upon the filing of her affidavit in which she consented to become a party to the litigation. Plaintiff filed her complaint in this action on July 26, 1995, and subsequently filed a party consent

form on December 22, 1995. Defendants claim that the latter date is the one upon which all statute of limitations determinations must be based.

 Defendants predicate their argument on 29 U.S.C. § 216(b), which provides that:

> An action to recover the liability ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

The statute's consent requirements, however, are inapplicable in this case. The provision requiring written consents was passed to ameliorate the problem of one employee bringing suit on behalf of herself and multitudes of others. *Allen v. Atlantic Richfield Co.,* 724 F.2d 1131, 1134 (5th Cir.1984). "It is clear that a plaintiff does not need to file a written consent if an individual action is maintained. He or she is the named plaintiff." *Id.* at 1135; *accord Morelock v. NCR Corp.,* 586 F.2d 1096, 1103 (6th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979).

Because plaintiff brought this suit solely on behalf of herself, no consent was needed. Her affidavit was superfluous. Accordingly, defendants' motion for partial summary judgment on this issue is denied.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for partial summary judgment (Doc. 31) is granted in part and denied in part as described in this memorandum and order.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**