**Stephanie R. GREEN, et al., on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**HARBOR FREIGHT TOOLS USA, INC., Defendant.**

**Case No. 09–CV–2380–JAR–JPO.**

United States District Court, D. Kansas.

Aug. 17, 2012.

Memorandum Denying Stay Dec. 14, 2012.

Amy P. Maloney, Matthew J. O'Laughlin, Holman Schiavone, LLC, Kansas City, MO, Theodore J. Lickteig, Law Offices of Theodore J. Lickteig, Lenexa, KS, for Plaintiffs.

Justin M. Dean, Mary Katherine Paulus, Patrick F. Hulla, Sara B. Anthony, Ogletree, Deakins, Nash, Smoak & Stewart, PC, Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

JULIE A. ROBINSON, District Judge.

Plaintiffs bring this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), against Defendant Harbor Freight Tools ("Harbor Freight"), claiming they were misclassified as exempt from the FLSA's overtime requirements and are owed overtime compensation. This matter is before the Court on Harbor Freight's Motion to Decertify Plaintiffs' Claims (Doc. 433), on the grounds that Plaintiffs are not similarly situated for purposes of a collective action under § 216(b) of the FLSA. The parties do not request a hearing, and after reviewing the extensive submissions and record, the Court determines that a hearing would not significantly assist in the determination of this matter. For the reasons explained in detail below, Harbor Freight's motion to decertify is granted.

## I. Procedural Background

Harbor Freight sells tools and related products and accessories at retail stores throughout the United States. All Harbor Freight Store Managers are governed by the same job description. Store Managers are the highest ranking employees working at each store, and directly report to District Managers, each of whom oversees approximately eight stores. The Store Manager position is classified as exempt from the FLSA overtime requirements.

Plaintiffs Stephanie Green, Brent Foster, Trey Pace, Dennis Collins and Andy VanMeter pursue their claims on their own behalf and on behalf of others who are "similarly situated." On August 17, 2010, this Court conditionally certified the following class:

> Individuals employed by Harbor Freight Tools USA, Inc. and any predecessors from the time period three years from the date of the Court's order to the present with the title Store Manager at any Harbor Freight Tools retail store.[1]

On September 15, 2010, the Court approved the parties' proposed Notice and Consent Form and the 90-day opt-in period began to run October 4, 2010.[2] Eighty-one (81) additional plaintiffs filed consents to join this action. By stipulation, fifty (50) of the total eighty-six (86) claims were dismissed without prejudice, leaving thirty-six (36) Plaintiffs.

Each of the thirty-six remaining Plaintiffs has responded to written discovery. Harbor Freight has deposed all current Plaintiffs as well as obtained declaration testimony from non-opt-in Store Managers. Harbor Freight has responded to written discovery requests and produced two corporate representatives to provide deposition testimony under Fed.R.Civ.P. 30(b)(6). Plaintiffs also deposed two former Harbor Freight District Managers.

---

1. Doc. 98.

2. Doc. 115.

## II. Standard

### A. Similarly Situated

As set forth in the Order granting conditional certification, the Tenth Circuit has not specifically defined the term "similarly situated" but has upheld the use of a two-step *ad hoc* method for determining whether a suit may proceed as a collective action under the FLSA.[3] The Court completed the first stage when it determined that certification was proper for purposes of sending notice of the action to potential collective action members, giving them the opportunity to opt-in to the action, and conditionally certifying the class as "similarly situated."[4] In so ruling, this Court joined other judges in this District in declining to consider the individualized nature of factual inquiries regarding whether an employee is exempt until the second-stage analysis.[5]

■ During the second stage, which occurs at the conclusion of discovery, a defendant typically files a motion to decertify the collective action.[6] Upon ruling on the motion to decertify, "the court then makes a second determination, utilizing a stricter standard of 'similarly situated.'"[7] If the claimants are indeed similarly situated, "the district court allows the representative action to proceed to trial.'"[8] "If the claimants are not similarly situated, the district court decertifies the class, [ ]

the opt-in plaintiffs are dismissed without prejudice," and "[t]he class representatives—*i.e.* the original plaintiffs—proceed to trial on their individual claims."[9] In determining whether plaintiffs have satisfied their burden to establish they are similarly situated, "a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."[10] The decision whether to decertify a collective action is within the district court's discretion.[11]

### B. Executive Exemption

■ In order to determine whether members of the class are similarly situated, the Court must consider the salient factors in an exemption analysis. Under the FLSA, the general rule is that any employee who works more than forty hours in a workweek must receive overtime compensation.[12] Employers need not pay overtime, however, if the employee is "employed in a bona fide executive, administrative, or professional capacity" as defined by the regulations promulgated by the Secretary of Labor.[13] While it is the employee's burden to prove that the employer is violating the FLSA,[14] it is the defendant employer's burden to prove that

---

3. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir.2001).

4. Doc. 98.

5. *Id.* at 11 (collecting cases).

6. *Thiessen*, 267 F.3d at 1102–03.

7. *Id.* at 1103.

8. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir.1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90–91, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).

9. *Id.*

10. *Thiessen*, 267 F.3d at 1103 (internal quotations omitted). *Thiessen* includes a fourth factor, namely, whether plaintiffs made the filings required by the ADEA before instituting suit, which is not applicable to FLSA cases. *See id.*

11. *Id.* at 1102 (citations omitted).

12. *See* 29 U.S.C. § 207(a)(1) (2000).

13. *See* 29 U.S.C. § 213(a)(1).

14. *Archuleta v. Wal–Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir.2008) (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 585, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000)).

the employee falls within one of these exceptions, all of which are narrowly construed against it.[15] Under the Department of Labor regulations, an employee qualifies for the executive exemption if the employee: (1) is paid a salary not less than $455 per week; (2) has a primary duty of management; (3) regularly directs two or more employees; and (4) has "authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight."[16] In this case, the second and fourth criteria are in dispute.

The FLSA regulations include the following illustrative list of management activities:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purposes of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials for merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[17]

Under the regulations, management itself entails performing tasks included in the other executive exemption criteria, *i.e.*, directing the work of other employees and having the authority to hire or fire and make influential recommendations that affect others' employment status.

An employee's "primary duty" is management if it is the "principal, main, major or most important duty that the employee performs."[18] To determine whether an employee's primary duty is management, the Court may look at the following non-exclusive factors: (1) the amount of time spent performing non-managerial tasks, (2) the relative importance of non-managerial duties as compared to other duties, (3) the employee's relative freedom from direct supervision, and (4) the relationship between the employee's salary and the wages paid to other employee's performing non-exempt work.[19]

 Although the FLSA regulations recognize that "the amount of time spent performing exempt work can be a useful guide in determining whether exempt work" is an employee's primary duty, they also stress that exempt employees are not required to completely abstain from non-exempt duties in order for the exempt classification to be proper.[20] Rather,

---

**15.** *Id.* (citing *Chessin v. Keystone Resort Mgmt., Inc.*, 184 F.3d 1188, 1192 (10th Cir. 1999)).

**16.** 29 C.F.R. § 541.100(a)(1)-(4) (2005).

**17.** 29 C.F.R. § 541.102.

**18.** 29 C.F.R. § 541.700(a).

**19.** 29 C.F.R. § 541.700(a). This regulation's predecessor, 29 C.F.R. § 541.103, is substantially the same with two changes. 29 C.F.R. § 541.700(a) deletes the factor relating to frequency with which the employee exercises discretionary powers and adds the word "direct" before the word "supervision".

**20.** *See Smith v. Heartland Auto. Servs., Inc.*, 404 F.Supp.2d 1144, 1151 (D.Minn.2005) (*"Jiffy Lube"*) (citing *Murray v. Stuckey's, Inc.*, 939 F.2d 614, 618 (8th Cir.1991)).

"[t]ime alone ... is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion."[21] The regulations also explicitly recognize that an employee may perform exempt and nonexempt duties concurrently.[22] "Whether an employee meets the [executive exemption criteria] when the employee performs concurrent duties is determined on a case-by-case basis."[23] The regulations distinguish between exempt and nonexempt employees who both perform nonexempt work based on whether the exempt employee retains supervisory and managerial responsibility even while performing non-exempt work:

> Generally, exempt executives ... [decide] when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined periods.[24]

Factors to consider in determining whether management is still an employee's primary duty when that individual is, for example, stocking shelves alongside the employees whom he simultaneously supervises, include to what extent the manager himself is closely supervised and what the pay difference is between the store manager and the nonexempt hourly employees.[25]

With respect to the fourth criteria, whether an employer gives "particular weight" to an employee's recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees depends on "whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon."[26] In general, "an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs." An employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decisions as to the employee's change in status."[27]

## C. Administrative Exemption

The FLSA also exempts from its overtime requirements any person employed in a bona fide administrative capacity.[28] The administrative exemption applies when the employer shows the employee's (i) compensation was paid on a salary basis of at least $455 per week, (ii) primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers, and (iii) primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.[29]

21. 29 C.F.R. § 541.700(b).

22. 29 C.F.R. § 541.106(a).

23. *Id.*

24. *Id.*

25. *Id.* (citing 29 C.F.R. § 541.700(c)).

26. 29 C.F.R. § 541.105.

27. *Id.*

28. 29 U.S.C. § 213(a)(1).

29. 29 C.F.R. § 541.200(a)(1)-(3).

The FLSA regulations state that the phrase "directly related to the management or general business operations":

> refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.[30]

The regulations also provide guidance regarding the terms "discretion and independent judgment":

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.[31]

"Discretion and independent judgment" must be considered in the context of relevant factors, such as whether the employee (i) has authority to formulate, affect, interpret, or implement management policies or operating practices, (ii) carries out major assignments, (iii) performs work affecting business operations to a substantial degree, (iv) has authority to commit the employer in matters that have significant financial impact, (v) has authority to waive or deviate from established policies and procedures without prior approval, (vi) has authority to negotiate and bind the company on significant matters, (vii) provides consultation or expert advice to management, (viii) is involved in planning long-term or short-term business objectives, (ix) investigates and resolves matters of significance on behalf of management, (x) and represents the company in handling complaints, arbitrating disputes or resolving grievances.[32] Finally, the exercise of discretion and independent judgment implies employees have authority to make independent choices, free from immediate direction or supervision, although administrative employees can exercise discretion and independent judgment when their decisions or recommendations are reviewed at a higher level.[33]

## III. Discussion

Plaintiffs' theory of their case, for certification purposes, is that by virtue of the hierarchal business structure of Harbor Freight, which implemented the company-wide use of the same job descriptions, across-the-board exempt classification and job duties, Store Managers are inherently similarly situated. Plaintiffs argue, in effect, that they were Store Managers in name only and spent the majority of their time performing non-managerial, manual labor. Harbor Freight argues the opposite—that the executive exemption defense is inherently individualized.

The Court does not determine on the pending motion for decertification whether Plaintiffs properly would be classified as exempt employees, as the only issue before the Court is whether Plaintiffs are sufficiently similarly situated to allow them to proceed with their claims collectively.[34] In conducting this analysis, the Court will consider the factors relevant to the second stage of the procedure under § 216(b).

---

**30.** 29 C.F.R. § 541.201.

**31.** 29 C.F.R. § 541.202(a).

**32.** 29 C.F.R. § 541.202(b).

**33.** 29 C.F.R. § 541.202(c).

**34.** *Nerland v. Caribou Coffee Co.,* 564 F.Supp.2d 1010, 1021 (S.D.Fla.2007) (citing *Jiffy Lube,* 404 F.Supp.2d at 1151) (citation omitted).

### A. Disparate Factual and Employment Settings of Plaintiffs

The first factor for the Court to consider at the decertification stage is the disparate factual and employment settings of the individual Store Managers. Plaintiffs present several categories of purported common and generalized evidence in support of their claims that their factual and employment settings are substantially similar. The Court discusses each in turn.

### 1. Common Job Description and Classification

All of Harbor Freight Store Managers' job duties and responsibilities are defined in a two-page job description.[35] The job description sets out primarily managerial tasks [36] listed as follows:

1. Ensures excellent customer service.
2. Assures that store is clean and well maintained.
3. Trains and develops employees. Selects, directs and evaluates personnel in all aspects of hiring, discipline, counseling, termination.
4. Oversees or performs product inventory, ordering, receiving, opening and closing.
5. Oversees or performs labor scheduling, hiring, wage administration, sales reporting, office procedure, receipts and deposits.
6. Controls loss and inventory shrink. Responsible for store cash handling.
7. Ensures an accident-free and non-violent workplace.
8. Plans, assigns, delegates, and inspects work.
9. Complies with Human Resources policies.
10. Promotes honesty and integrity in all areas of store operations.
11. Establishes and meets sales targets.
12. Establishes and meets payroll and other budgets.
13. Maintains proper merchandise categorization.
14. Assures that store is properly signed, including signage for advertised specials.
15. Assures that store handles price changes accurately and in a timely manner.
16. Promotes goal of 95% "in stock" position.
17. Promotes goal of 95% on store audits.
18. Assures that store captures 97% of all customer zip codes.
19. Assures that store captures name and addresses of customers for mailing lists.
20. Performs other duties as required.

In addition, the job description states that "Store Managers need to know and perform ALL store operations. They collect, organize, and file information as well as perform computer data entry, 10–key calculator, working closely with the general public, and speaking on the telephone." [37]

The Court finds that this is not a case in which Plaintiffs can rely on a common job description as evidence that a collective action appropriate. A job title alone is "insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations." [38] Although Plaintiffs

---

**35.** Doc. 440, Ex. 46.

**36.** *See* 29 C.F.R. § 541.102 (listing examples of management activities).

**37.** Doc. 440, Ex. 46.

**38.** 29 C.F.R. § 541.2.

contend that the job description regularly required them to perform non-managerial duties, such as cleaning the store, unloading trucks, stocking shelves and changing price signs, the FLSA does not require complete abstention from non-exempt duties in order for the exempt classification to be proper.[39] Indeed, by maintaining that it is their day-to-day responsibilities that render them misclassified, Plaintiffs effectively disavow the job description as containing a number of items that, although may appear managerial, can be shown to be manual or clerical labor. Plaintiffs offer testimony from individual Store Managers that the written job description does not accurately reflect their actual day-to-day duties. Thus, Plaintiffs may not rely on the job description itself as generalized evidence of the scope and similarity of their daily activities. Instead, the Court must conduct a fact-intensive inquiry into the daily activities of each individual plaintiff in order to adequately identify the actual scope of Plaintiffs' job duties to determine the extent and consequences of any disparities among them.[40]

The Court notes that this case is factually distinguishable from cases upon which Plaintiffs rely, where the common job description was found to fully describe the scope of the duties performed by store managers. For example, in *Nerland v. Caribou Coffee Company*,[41] the court concluded that the Caribou Coffee common job description comprehensively described the scope of duties performed by store managers, and revealed on its face that these duties included "a full blend of managerial and non-managerial tasks," and could serve as competent generalized evidence of the uniform scope of duties of all Caribou managers.[42] Thus, an inquiry into the daily job duties of each individual plaintiff to identify the actual scope of his or her job duties was not necessary.[43] In so ruling, the court acknowledged that the uniformity of job title and scope of duties distinguished that case from other FLSA collective action cases.[44]

Plaintiffs also assert that Harbor Freight's decision to classify all Store Managers as exempt without considering individualized differences in factual and employment settings is an important factor in finding that they are similarly situated. According to Plaintiffs, this "blanket" policy belies Harbor Freight's argument that individualized inquiries would be needed at trial to determine whether each individual class member was exempt. However, merely classifying a group of employees as exempt does not automatically qualify them as similarly situated, nor eliminate the need to make a factual determination as to whether class members are actually performing similar duties.[45] And the

---

39. *See, e.g., Murray v. Stuckey's, Inc.*, 939 F.2d 614, 618 (8th Cir.1991).

40. *See Jiffy Lube*, 404 F.Supp.2d at 1149 (ordering decertification of Jiffy Lube store managers, after declining to allow plaintiffs to rely on common job description as evidence that a collective action was the appropriate method of bringing their mis-classification claims).

41. 564 F.Supp.2d 1010 (D.Minn.2007).

42. *Id.* at 1019–20.

43. *Id.*

44. *Id.* at 1020, n. 5; *see also Pendlebury v. Starbucks Coffee Co.*, 518 F.Supp.2d 1345,

1352 (S.D.Fla.2007) (allowing common job description that specified store managers must perform duties of non-exempt employees).

45. *See Pendlebury*, 518 F.Supp.2d at 1353; *Austin v. CUNA Mut. Ins. Soc.*, 240 F.R.D. 420, 429 (W.D.Wis.2006); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F.Supp.2d 493, 498 (D.N.J.2000); *Aquilino v. Home Depot, U.S.A., Inc.*, No. 04–4100(PGS), 2011 WL 564039, at *7 (D.N.J. Feb. 15, 2011); *King v. West Corp.*, No. 04–318, 2006 WL 118577, at *41 (D.Neb. Jan. 13, 2006) (citation omitted). *But see Caribou Coffee*, 564 F.Supp.2d at 1023–24 (holding company's "all or nothing" ap-

Court agrees with Harbor Freight that the "unified policy, plan or scheme" standard is more appropriately applied at the first stage of the certification analysis.[46] Accordingly, Plaintiffs cannot rely on common proof evidence of Harbor Freight's decision to classify the Store Manager position as exempt.

### 2. Primary Duties

 Because the parties focus their argument on whether Plaintiffs are similarly situated with respect to the executive exemption, the Court begins its analysis there. Further, in light of the Court's ruling on Harbor Freight's company-wide policy to classify Store Managers as exempt, the Court will disregard the declarations proffered by current non-opt-in Store Managers.

#### *Amount of time spent performing non-managerial tasks*

 There is no dispute that every Plaintiff reported that they regularly worked more than fifty hours per week without receiving overtime compensation. Plaintiffs argue that they have presented class-wide evidence that Store Managers spent between 80 to 90 percent of their time doing manual labor, such as working the cash register, unloading the truck, stocking and cleaning.[47] The case law is clear, however, that "if an employee spends less than 50% of his time on mana-

gerial duties, he is not presumed to have a primary duty of non-management."[48] Moreover, as Harbor Freight points out, Plaintiffs' testimony reveals the nature of Store Managers' alleged manual labor varies. Some Plaintiffs testified that they "multi-tasked," simultaneously performing management duties and manual labor.[49] Likewise, some Plaintiffs testified that their managerial duties were more important than any manual labor activities they might be performing,[50] while others claimed manual labor tasks took precedence.[51] While time spent on non-managerial duties is a relevant factor in exemption analysis, Plaintiffs' case for certification cannot rest solely on this similarity, as it is not a dispositive showing.[52] Thus, the Court turns to whether Plaintiffs have established that they are similarly situated in other relevant aspects, limiting its analysis to the first and third factors, as the parties do not discuss the relative importance of non-managerial duties compared to other duties or the relationship between the employee's salary and the wages paid to other employees.

#### *Relative Freedom from Direct Supervision*

 The 2004 amendments to the FLSA regulations no longer identify discretion in decision-making as a distinct consideration in deciding whether management is an employee's primary duty.[53]

---

proach to exemption analysis of store managers counseled in favor of finding plaintiffs were similarly situated).

46. See *Pendlebury*, 518 F.Supp.2d at 1348, n. 3 (citing cases); *cf. Falcon v. Starbucks*, 580 F.Supp.2d 528, 535–36 (S.D.Tex.2008) (finding plaintiffs were similarly situated where evidence showed all putative class members were affected by Starbuck's common practice of pressuring or encouraging exempt employees to work "off-the-clock") (citing cases).

47. See Doc. 440, Ex. 1.

48. *Jiffy Lube*, 404 F.Supp.2d at 1152 (quoting *Auer v. Robbins*, 65 F.3d 702, 712 (8th Cir. 1995)).

49. Vanatta Dep. Tr. at 103–04; Martini Dep. Tr. at 72–73; Foster Dep. Tr. at 267–68.

50. Edmonds Dep. Tr. at 148–49.

51. Van Horn Dep. Tr. at 93–94.

52. *Jiffy Lube*, 404 F.Supp.2d at 1152.

53. 29 C.F.R. § 541.700(a).

However, "[b]ecause the frequency with which an employee exercises discretionary power is part and parcel of freedom from supervision," the Court considers these factors jointly.[54]

Plaintiffs contend that every Store Manager reported to a District Manager and that common evidence establishes that Harbor Freight further micromanaged Store Managers through strict payroll budgets and "planograms," or corporate mandated, predetermined product placement in each store. Thus, Plaintiffs argue, they are similarly situated in that their managerial discretion was severely limited by District Managers, Human Resources and corporate policies that dictated how to perform the details of their Store Managers' job responsibilities.

■ Although all Store Managers answer to a District Manager, the issue is *relative* freedom from direct supervision, not complete freedom. Several courts have held that "employees who follow detailed corporate directives and company policies are not so tightly controlled or stripped of discretion that their work does not qualify as exempt."[55] Consistent with these decisions and the reminders in the FLSA regulations, "determination of whether an executive employee's judgment is so constrained as to be misclassified is a highly fact-intensive and nuanced inquiry into the particular circumstances of an employee's job."[56] In this case, Plaintiffs' testimony suggests that there is a lack of uniformity among them with respect to how much control District Managers exercised over Store Managers and how much discretion they were afforded in their management tasks. Some Plaintiffs testified that their District Managers were rarely at their stores[57] and, according to former District Managers Kent Koentrop and Ray Shadel, depending on a store's location or a particular Store Manager's performance, the frequency of such visits could be even more sporadic.[58] Some Plaintiffs testified that every aspect of their performance was controlled by their District Managers,[59] and described more frequent visits by their District Managers, ranging from one to three visits a week to a District Manager who officed out of a Plaintiff's store.[60] Others testified to having more control over their stores and more discretion in the direction of employees. For example, several Plaintiffs testified that they created task lists and other tools to plan and assign work,[61] while others relied on Harbor Freight to decide how to delegate work,[62] or assigned employees tasks only when her District Manager was on vacation.[63] Similarly, some Plaintiffs testified that while Harbor Freight set payroll, they

**54.** *Clougher v. Home Depot U.S.A., Inc.,* 696 F.Supp.2d 285, 292–93 (E.D.N.Y.2010); *Johnson v. Big Lots Stores, Inc.,* 604 F.Supp.2d 903, 917 (E.D.La.2009) (citing *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1270 n. 57 (11th Cir.2008)); *see also Jones v. Va. Oil Co.,* 69 Fed.Appx. 633, 638 (4th Cir.2003) (explaining "[d]iscretionary powers" and "freedom of supervision" overlap to a certain extent and are easily examined together).

**55.** *Johnson v. Big Lots Stores, Inc.,* 561 F.Supp.2d 567, 583–84 (E.D.La.2008) (collecting cases).

**56.** *Id.* at 584.

**57.** Schwinn Dep. Tr. at 99; Watkins Dep. Tr. at 117.

**58.** Koentrop Dep. Tr. at 251; Shadel Dep. Tr. at 135.

**59.** Amico Dep. Tr. at 23.

**60.** Martin Dep. Tr. at 99; Leathers Dep. Tr. at 95; Green Dep. Tr. at 40–41.

**61.** Beltran Dep. Tr. at 57–59; Martini Dep. Tr. at 38–39.

**62.** Mroczenski Dep. Tr. at 132.

**63.** Schnelle Dep. Tr. at 50–51.

made decisions about employees' raises and notified Human Resources after the fact,[64] while others testified that they made recommendations about raises that were fully or partially implemented.[65] And one Plaintiff testified that he developed training policies and programs for Assistant Managers,[66] while others testified that they delegated their training responsibilities.[67] Because the amount of discretion a Store Manager has, and the relative amount of control he or she exercises over the employees and operations of the store, are crucial factors to be considered in an FLSA exemption analysis,[68] this factor weighs against the action continuing as a collective one.

### 3. Authority to Hire or Fire or Make Recommendations That Are Given Particular Weight

Harbor Freight claims that the ability of Store Managers to hire, terminate and discipline employees ranges from Plaintiffs who were "solely responsible" for hiring to those who had "no responsibility." Plaintiffs counter that Human Resources made the final decision on all hiring, termination and disciplinary matters. The evidence, however, demonstrates that Human Resources or "Corporate" was involved to some extent in the decision making process, with differences regarding how much latitude Store Managers possessed in making or influencing these decisions.

With respect to hiring, Plaintiffs' testimony is consistent that Store Managers would take applications from potential hires, conduct an initial interview and review, and send applications on to Human Resources for background check, which would send back a list of applicants approved or denied for hire.[69] The variations in testimony centered on the weight given a particular Store Manager's hiring recommendations, ranging from Plaintiffs who were free to chose from applicants that Human Resources approved for hire after the background check,[70] to Plaintiffs who hired whomever corporate told them to hire.[71]

The evidence is similar with respect to Plaintiffs' authority to discipline and terminate other employees. Testimony was consistent that Store Managers could not terminate or discipline an employee without approval or direction from Human Resources.[72] For example, one Plaintiff testified that when an employee violated Harbor Freight's three-day no call/no show policy, he would call Human Resources, and was directed how to write up a separation notice.[73] Testimony was also consistent that Store Managers notified Human Resources of discipline or termination issues, based on their write-ups and reports. Like hiring decisions, the variations in testimony centered on the weight

---

64. Fetes Dep. Tr. at 253–54; Foster Dep. Tr. at 159–61.

65. Miranda Dep. Tr. at 80; Mroczenski Dep. Tr. at 55–60.

66. Sims Dep. Tr. at 16–17, 22–23.

67. Black Dep. Tr. at 119–20; Pinero Dep. Tr. at 60–61; Norby Dep. Tr. at 136.

68. *Jiffy Lube,* 404 F.Supp.2d at 1153–54 (citing *Murray,* 939 F.2d at 618 ("'[T]he person 'in charge' of a store has management as his primary duty . . .'")).

69. Rapalee Dep. Tr. at 106–09; Martin Dep. Tr. at 61–67; Evans Dep. Tr. at 84–85.

70. *See id.*

71. Smith Dep. Tr. at 76–78; Black Dep. Tr. at 43–45.

72. Leathers Dep. Tr. At 143; Rapalee Dep. Tr. at 86–87; Roberts Dep. Tr. at 36–37.

73. Collins Dep. Tr. at 194.

given a particular Store Manager's firing and discipline recommendations, ranging from Plaintiffs who testified Human Resources typically followed their recommendations,[74] to Plaintiffs whose recommendations were followed less than 50% of the time,[75] to Plaintiffs who testified they had no authority and their sole role was to provide factual information to Human Resources.[76] This factor also weighs against proceeding collectively.

### 4. Administrative Exemption

Although Plaintiffs do not specifically address whether they are similarly situated with respect to the administrative exemption, the Court reaches the same conclusion as above. Like the executive exemption, the focus of whether an employee is properly classified under the administrative exemption requires an individualized inquiry into a Plaintiff's day-to-day job responsibilities and tasks.[77] Moreover, the salient factors for the exemption focus on whether the employee's primary duty involves non-manual work directly related to management and the exercise of discretion and independent judgment. The evidence varies as to the nature and variety of decisions made by Plaintiffs, how they ran their respective stores, their authority to make independent choices, and the degree to which their recommendations were considered or reviewed at a higher level, weighing against proceeding collectively.

### B. Individualized Defenses

The second factor for the Court to consider is "whether the potential defenses pertain to the opt-in class as a whole or whether, many different defenses will be raised with respect to each individual plaintiff."[78] Courts have granted motions for decertification based on this factor because individualized defenses inhibit the efficiency of proceedings on a collective basis.[79] Nevertheless, it is within the Court's discretion as to " 'whether the potential defenses would make the class unmanageable.' "[80]

Harbor Freight has indicated that it intends to present individualized evidence as to each opt-in Plaintiff's claim and that the record reveals that it is not possible to establish the Plaintiffs' daily tasks through common testimony, due to what it deems the individualized and fact intensive nature of the exemption analysis under the circumstances of this case. In addition, according to Harbor Freight, evidence exists calling into question the credibility of Plaintiffs' claims, including Plaintiffs' own resumes touting their management responsibilities as well as their contradictory testimony and sworn discovery responses. Plaintiffs respond that Harbor Freight can only put forth one common defense that applies across the board—the executive exemption. According to Plaintiffs, this defense can be addressed collectively and refuted by all Plaintiffs through generalized evidence.

---

**74.** Fetes Dep. Tr. at 85–86.

**75.** Green Dep. Tr. at 311–12.

**76.** Adam Dep. Tr. at 43–44; Black Dep. Tr. at 77–79; Evans Dep. Tr. at 88.

**77.** *See Szymula v. Ash Grove Cement Co.,* 941 F.Supp. 1032, 1037 (D.Kan.1996).

**78.** *Aquilino v. Home Depot,* No. 04–4100, 2011 WL 564039, at *9 (D.N.J. Feb. 15, 2011) (quoting *Reyes v. Tex. EZPawn, L.P.,* No. V–

03–128, 2007 WL 101808 (S.D.Tex. Jan. 8, 2007)).

**79.** *Id.*

**80.** *Zavala v. Wal–Mart Stores, Inc.,* No. 03–5309, 2010 WL 2652510, at *10 (D.N.J. June 25, 2010) (quoting *Moss v. Crawford & Co.,* 201 F.R.D. 398, 410 (W.D.Pa.2000)).

The Court finds that the potential defenses of Harbor Freight would make collective treatment of this action unmanageable. As discussed above, Plaintiffs have not shown that they are similarly situated on many of the fact-specific issues that must be addressed at a trial on the merits of their misclassification claim. The deposition testimony shows that it is not possible to develop common testimony from the Store Managers regarding their daily responsibilities and duties, or the weight given their recommendations regarding hiring, firing and discipline. The case of *Johnson v. Big Lots Stores, Inc.* is illustrative.[81] In that case, the court decertified a FLSA action because it determined that the defendants' claims that its employees were subject to the executive exemption necessitated individual inquiries.[82] The court explained, "[u]sing representative proof is problematic if for every instance in which an opt-in plaintiff reported that she hired subordinates, there is an alternative response to the contrary." [83] In light of the similar discrepancies in this case, the Court finds that the individualized defenses for each opt-in Plaintiff weighs against continued certification.

### C. Fairness and Procedural Considerations

 Fairness and procedural considerations are important when addressing whether Plaintiffs are similarly situated.[84] "The primary objectives of a § 216(b) collective action are: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." [85]

 Harbor Freight claims that because the facts are so individualized, it would be impossible to proceed with this action using representative testimony. As discussed, Harbor Freight contends that hundreds of witnesses would be required to testify, "which will devolve into numerous mini-trials, causing the jury to evaluate testimony from countless witnesses and other evidence that is unique to particular Plaintiffs," and thus incompatible with collective actions. The Court agrees. Given the Court's determination that Plaintiffs are not similarly situated with respect to key issues in the exemption analysis, the pursuit of individualized actions is a necessary result. Moreover, proceeding as a class would not be efficient, as it would likely result in two trials, one to establish liability and a second to determine damages. While decertification places opt-in Plaintiffs at "square one," they are not overly prejudiced because many have likely benefitted from the implementation of class-wide discovery on many of the issues relevant to their FLSA claims. Thus, the Court concludes this factor militates against maintaining class certification.

### IV. Conclusion

The Court recognizes that Plaintiffs have made a general showing of similarity with respect to some aspects of their positions as Store Managers, including the time spent on allegedly manual labor, the requirement that they run individual stores according to corporate policies and are supervised by District Managers. But given the fact intensive nature of the executive exemption analysis, Plaintiffs have not satisfied the Court that they are similarly situated to the extent necessary to

---

81. 561 F.Supp.2d 567, 586 (E.D.La.2008).

82. *Id.*

83. *Id.*

84. *See Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1103 (10th Cir.2001).

85. *Scott v. Raudin McCormick,* No. 08–4045–EFM, 2010 WL 5093650, at *4 (D.Kan. Dec. 8, 2010) (quoting *Moss,* 201 F.R.D. at 410).

make collective treatment of their claims proper and efficient under § 216(b) of the FLSA. Such diversity in individual employment situations inhibits Harbor Freight from proving its statutory exemption defenses relating to each individual Plaintiff's claim based on representative proof. Based on the foregoing, the Court concludes that decertifying the class is required.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Harbor Freight's Motion to Decertify (Doc. 433) Plaintiff's claims as a collective action under the FLSA is GRANTED;

**IT IS FURTHER ORDERED** that the following remaining opt-in Plaintiffs are DISMISSED without prejudice:

James Michael Adam
Christopher Amico
Cassandra Audrain
William Bartek
Frank Beltran
Richard Black
Glenn Edmunds
Donald Erickson
Tracey Evans
Eric Fetes
Edward Jurewic
Karl Larson
Rich Leathers
Greg Lupia
Robert Martin
James Martini
Johnny Miranda
Adam Mroczenski
Jim Norby
Michael Pinero
Darrell Porterfield
Ray William Rapalee
Virginia Schnelle
Bill Schwinn
Ryan Sims
Jason Smith
Layson Tapp
Paul Van Horn
Nicholas Vannatta
Jay Watkins
Sherry Werner

**IT IS SO ORDERED.**

### *MEMORANDUM AND ORDER*

██ Plaintiffs brought this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), against Defendant Harbor Freight Tools USA, Inc. ("Harbor Freight"), claiming they were misclassified as exempt from the FLSA's overtime requirements and are owed overtime compensation. On August 17, 2012, this Court granted Defendant's motion to decertify the conditionally certified class of workers, and dismissed without prejudice the claims of the thirty-one opt-in claimants.[1] This matter is before the Court on Plaintiffs' Motion for Stay of Statute of Limitations for Dismissed Opt–Ins (Doc. 449). Plaintiffs request that the stay be effective August 17, 2012, and run to sixty (60) days after the Court's ruling on Defendant's pending motions for summary judgment against the claims of the five named Plaintiffs.

An action is commenced under the FLSA when a party files suit, but in the case of a collective action, if a party's name does not appear on the complaint, the action is commenced when that party files his or her written consent to become a party of the collective action.[2] The statute of limitations for a plaintiff in a collective action is tolled after the plaintiff has filed a consent to opt in to the collective action, and begins to run again if the court later decertifies the collective action.[3] There is

---

1. Doc. 444.

2. 29 U.S.C. § 256(a), (b).

3. 29 U.S.C. § 216(b).

no language in the FLSA that provides for tolling the claims of former opt-in plaintiffs following decertification of a collective action.[4] Thus, Plaintiffs' request is, in effect, a request that the Court equitably toll the statute of limitations to permit the opt-in plaintiffs to refile their individual claims.

Plaintiffs' motion is denied. The Court agrees with the reasoning of the district court in the recent case of *Eppenscheid, et al. v. DirectSat USA, LLC,* where plaintiffs in a collective action sought a ruling that the court's stay of the case pending an interlocutory appeal after decertification tolled the statute of limitations as to the individual claims of the former opt-in plaintiffs.[5] The court held that it is "inappropriate for this court to enter a broad order concerning tolling at this stage because the issue of tolling should be addressed by the courts in which those individuals file their lawsuits."[6] As that court explained,

> plaintiffs are seeking tolling for the benefit of an unknown group of potential plaintiffs who may, in the future, choose to file individual actions, and whose claims may be adversely affected by the

normal running of the limitations period. Under such circumstances, [the court] cannot determine whether tolling would be appropriate.[7]

In the FLSA context, as in others, equitable tolling "permits courts to extend statutes of limitations on a case-by-case basis in order to prevent inequity."[8] Accordingly, it is left to the court in which the dismissed opt-in plaintiffs refile their claims, rather than this Court, to determine whether equity justifies tolling any limitations period.[9]

Moreover, even if the Court deemed it appropriate to determine whether a stay of the decertification order equitably tolled the statute of limitations, it would deny Plaintiffs' request. As previously discussed, the FLSA does not have a so-called "savings statute" tolling the limitations period for opt-ins following decertification. In support of their request that the Court equitably toll the statute of limitations pending ruling on the summary judgment motions, Plaintiffs cite to cases in which district courts have stayed their decertification orders for a limited period of time in order to protect the opt-in plaintiffs' ability to timely file individual actions, often with little or no discussion.[10] Al-

---

4. *Id.*

5. No. 09–cv–625–bbc, slip op. at 1–2 (W.D.Wis. July 7, 2011).

6. *Id.* at 2–3 (citing *Puffer v. Allstate Ins. Co.,* 614 F.Supp.2d 905, 917 (N.D.Ill.2009) (holding that tolling analysis is "fact-specific" and making "blanket tolling order" is inappropriate); *Radmanovich v. Combined Ins. Co. of Am.,* 271 F.Supp.2d 1075, 1079 (N.D.Ill.2003) (holding that determinations of tolling must be made on case-by-case basis "if and when" individual files lawsuit)).

7. *Id.*

8. *Johnson v. Academy Mortg. Co.,* No. 12–CV–276 TS, 2012 WL 3886098, at *1 (D.Utah Sept. 6, 2012).

9. *See Merriweather v. Sw. Research Inst.,* No. 09–cv–0328–JMS–WGH, 2010 WL 5139862,

at *2 (S.D.Ind. Dec. 10, 2010) (where court denied motion for equitable tolling because conditional class was never certified, further concluding that "[i]f the opt-in plaintiffs choose to file individual lawsuits, any questions regarding the statute of limitations should be answered by the courts in which those suits are filed.").

10. *See, e.g., Beauperthuy v. 24 Hour Fitness USA, Inc.,* 772 F.Supp.2d 1111, 1134 (N.D.Cal.2011) ("To avoid prejudice to individual opt-in Plaintiffs who may choose to file their own cases, the Court invokes its equity powers to toll the applicable statute of limitations for 30 days after the entry of this Order."); *Proctor v. Allsups Convenience Stores, Inc.,* 250 F.R.D. 278, 284 (N.D.Tex.2008) (tolling statute of limitations for opt-in plaintiffs for 30 days); *Smith v. Heartland Automotive Servs.,* 404 F.Supp.2d 1144, 1155 (D.Minn. 2005) (staying decision granting motion to

though the Tenth Circuit has not addressed the circumstances in which equitable tolling applies in FLSA cases, it has addressed the doctrine in the context of other statutes, including Title VII, where it applies when there has been "active deception." [11] The Sixth Circuit set forth the following factors to be considered when determining if the doctrine applies to FLSA claims:

> (1) whether the plaintiffs lacked actual notice of their rights and obligations; (2) whether they lacked constructive notice; (3) the diligence with which they pursued their rights; (4) whether the defendant would be prejudiced if the statute were tolled; and (5) the reasonableness of the plaintiffs' remaining ignorant of their rights.[12]

Plaintiffs do not assert that any opt-in plaintiff who has exercised due diligence or was actively deceived will be barred from filing suit. Indeed, Plaintiffs should have notified the opt-in plaintiffs that the case has been decertified as of August 17, 2012, and that the statute of limitations on their ability to file individual suit is running. Significantly, Plaintiffs did not request the Court stay its decertification order either in their response in opposition to Defendant's motion or in a motion for reconsideration or to alter or amend the order dismissing the opt-in plaintiffs without prejudice. Instead, they filed the instant request nearly six weeks after entry of the decertification order, seeking retroactive relief much broader than that granted in the cases they cite in support of their request, where the courts typically stayed the decertification order for thirty to sixty days contemporaneously with entry of the order.[13] These circumstances do not offer any support for Plaintiffs' request for equitable tolling, and their motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion for Stay of Statute of Limitations for Dismissed Opt–Ins (Doc. 449) is DENIED.

**IT IS SO ORDERED.**

11. *See Smith v. BNSF Ry. Co.*, 246 F.R.D. 652, 654–55 (D.Kan.2007) (discussing doctrine in context of FLSA case) (citing *Million v. Frank*, 47 F.3d 385, 389 (10th Cir.1995)).

12. *Archer v. Sullivan Cnty., Tenn.*, Nos. 95–5214, 95–5215, 1997 WL 720406, at *3 (6th Cir. Nov. 14, 1997).

13. *See e.g., Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F.Supp.2d 1111, 1134 (N.D.Cal.2011) ("To avoid prejudice to individual opt-in Plaintiffs who may choose to file their own cases, the Court invokes its equity powers to toll the applicable statute of limitations for 30 days after the entry of this Order."); *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 284 (N.D.Tex.2008) (tolling statute of limitations for opt-in plaintiffs for 30 days); *Smith v. Heartland Automotive Servs.*, 404 F.Supp.2d 1144, 1155 (D.Minn. 2005) (staying decision granting motion to decertify for 60 days to permit opt-in plaintiffs to refile their claims).